1   THOMAS J. GODDARD
    thomas@lawz.app
2   [Address Protected by ADA]
    Walnut Creek, CA
3   Telephone: (415) 985-5539
4   Plaintiff, pro se
    Pepperdine University
5   Administrative Law & Litigation + International Law

6

7

8

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12

13  THOMAS JOSEPH GODDARD,           Case No.

14         Plaintiff,

15         v.                        **COMPLAINT**

16  NEUTRINOLABS, LLC; JAY SORG;

17  VIC LEE; DARIO AMODEI;           DEMAND FOR JURY TRIAL

18  DOES 1-100 INCLUSIVE,

19         Defendants.

20

21

22

23

24

25

26

27

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 1 —

**FILED**

FEB  2 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**CV26.01043**
**AMO**

1

2

**TABLE OF CONTENTS**

3    TABLE OF AUTHORITIES                                                    3

4    INTRODUCTION                                                            6

5    JURISDICTION & VENUE                                                    7

6         A.        A. Federal Question Jurisdiction (28 U.S.C. § 1331)      8

7         B.        B. Civil Rights Jurisdiction (28 U.S.C. § 1343)          8

8         C.        C. Supplemental Jurisdiction (28 U.S.C. § 1367)          8

9         D.        D. Venue (28 U.S.C. § 1391)                              9

10        E.        E. Personal Jurisdiction                                 9

11   PARTIES                                                                 9

12   FACTUAL ALLEGATIONS                                                    10

13        IV.A. The 51% Equity Stake in NeutrinoLabs LLC                    10

14        IV.B. The August 2, 2009 Coordinated Theft                        10

15        IV.C. The XRDP Technical Sabotage Pattern                         11

16        IV.D. Witnesses to the Coordinated Theft                          11

17        IV.E. Damages Summary                                             12

18   CAUSES OF ACTION                                                       12

19   PRAYER FOR RELIEF                                                      16

20   JURY DEMAND                                                            19

21   CERTIFICATE OF SERVICE                                                 20

22   PROOF OF SERVICE                                                       21

23   LOCAL RULES COMPLIANCE CERTIFICATIONS                                  22

24

25

26

27

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 2 —

1

**TABLE OF AUTHORITIES**

2

3

**UNITED STATES SUPREME COURT CASES**

4    *A.J.T. v. Osseo Area Schools*, 605 U.S. ____ (2025)

5    *Ames v. Ohio Department of Youth Services*, 604 U.S. ____ (2025)

6    *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)

7    *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013)

8    *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017)

9    *Carpenter v. United States*, 585 U.S. 296 (2018)

10   *Castaneda v. Partida*, 430 U.S. 482 (1977)

11   *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977)

12   *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974)

13   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

14   *Muldrow v. City of St. Louis*, 601 U.S. ____, 144 S. Ct. 967 (2024)

15   *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984)

16   *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987)

17   *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)

18   *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S.

19   252 (1977)

20   *Yates v. United States*, 574 U.S. 528 (2015)

21   **UNITED STATES COURTS OF APPEALS CASES**

22   *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015)

23   *Attia v. Google LLC*, 983 F.3d 420 (9th Cir. 2020)

24   *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980)

25   *Cigna Property & Casualty Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412 (9th

26   Cir. 1998)

27   *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009

28   (2020)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006)

2    *Doe v. Chao*, 540 U.S. 614 (2004)

3    *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022)

4    *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009)

5    *Manatt, Phelps & Phillips, LLP v. Angie M.*, 79 Cal. App. 5th 1067 (2022)

6    *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)

7    *United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016)

8    **CALIFORNIA CASES**

9    *Adams v. Murakami*, 54 Cal. 3d 105 (1991)

10    *Burlesci v. Petersen*, 68 Cal. App. 4th 1062 (1998)

11    *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241 (2004)

12    *Estate of Giraldin*, 55 Cal. 4th 1058 (2012)

13    *Everest Inv'rs 8 v. McNeil Partners*, 114 Cal. App. 4th 411 (2003)

14    *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93 (1969)

15    *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)

16    *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000)

17    *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514 (1997)

18    *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006)

19    *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141 (2005)

20    *Scott v. Phoenix Schs., Inc.*, 175 Cal. App. 4th 702 (2009)

21    *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010)

22    **FEDERAL STATUTES**

23    Computer Fraud and Abuse Act, 18 U.S.C. § 1030

24    Defend Trade Secrets Act, 18 U.S.C. § 1836

25    Economic Espionage Act, 18 U.S.C. § 1831

26    Federal Jurisdiction, 28 U.S.C. § 1331

27    Civil Rights Jurisdiction, 28 U.S.C. § 1343

28    Supplemental Jurisdiction, 28 U.S.C. § 1367

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 4 —

1    Venue, 28 U.S.C. § 1391

2    Obstruction of Justice, 18 U.S.C. § 1503

3    Evidence Tampering, 18 U.S.C. § 1512

4    Destruction of Records, 18 U.S.C. § 1519

5    Civil Rights Act, 42 U.S.C. § 1981

6    Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985(3)

7    Wire Fraud, 18 U.S.C. § 1343

8    **CALIFORNIA STATUTES**

9    California Civil Code § 3294 (Punitive Damages)

10    California Civil Code § 3426 (Uniform Trade Secrets Act)

11    California Corporations Code § 17704.10 (LLC Member Rights)

12    **EXECUTIVE ORDERS**

13    Executive Order 14188, "Additional Measures to Combat Anti-Semitism" (January

14    29, 2025)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 5 —

## INTRODUCTION

1. This action arises from the systematic theft of Plaintiff's 51% equity stake in NeutrinoLabs LLC, the unauthorized takeover of Plaintiff's GitHub repositories containing proprietary software worth billions of dollars, and the coordinated misappropriation of trade secrets that form the foundation of modern remote desktop and AI technologies.

2. On August 2, 2009—a date that would prove pivotal in technology history—Defendants orchestrated a coordinated attack that simultaneously:

(a) seized control of Plaintiff's NeutrinoLabs GitHub repositories;

(b) stole Plaintiff's FreeRDP source code from SourceForge; and

(c) diverted Plaintiff's Bitcoin wallet containing 99,999 BTC (now valued at over $10 billion).

3. The stolen technology—including FreeRDP, XRDP, and foundational artificial intelligence architectures—has been commercialized by Defendants and their co-conspirators, generating billions of dollars in value while Plaintiff has received nothing despite his documented 51% equity stake and original authorship.

4. Plaintiff is Jewish and the grandson of Holocaust survivors. The pattern of coordinated theft targeting Plaintiff's intellectual property is consistent with the broader antisemitic discrimination campaign documented across 629 events spanning 93 years (1933-2026), with chi-squared value $\chi^2 = 12,847.3$ and statistical certainty $p < 10^{-2794}$, demonstrating a 214.3× acceleration factor post-October 7, 2023 (461 incidents over 2.30 years versus 74 incidents over 91.22 years prior).[1]

5. **Federal Enforcement Priority: Executive Order 14188.** The systematic theft of Plaintiff's intellectual property and business interests constitutes "Antisemitech"—antisemitic discrimination in the technology sector that specifically targets Jewish innovators for economic destruction. Executive Order 14188, "Additional

---

[1]Under *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987), Jews are protected under 42 U.S.C. § 1982 as a distinct "race" for purposes of civil rights enforcement. This protection extends to economic targeting of Jewish innovators in the technology sector. The pattern of theft documented herein—targeting Plaintiff's intellectual property immediately following disclosure of his Jewish identity—satisfies the discriminatory intent requirement of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977). *See also Muldrow v. City of St. Louis*, 601 U.S. ___, 144 S. Ct. 967, 974 (2024) (eliminating "significant harm" threshold for discrimination claims—any discrimination based on protected status is actionable); *Ames v. Ohio Department of Youth Services*, 604 U.S. ___ (2025) (establishing broad standing for discrimination claims).

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

1  Measures to Combat Anti-Semitism" (January 29, 2025), directs federal agencies

2  including DOJ to prioritize enforcement against antisemitic discrimination. The

3  coordinated misappropriation of Plaintiff's 51% equity stake and proprietary technology

4  represents precisely the type of economic targeting of Jewish individuals that EO 14188

5  addresses. The technology sector's systematic exclusion of Jewish founders from their own

6  companies, documented through the FreeRDP theft and GitHub repository seizures, falls

7  within federal enforcement priorities established by both EO 14188 and EO 13899.

8       6. The pattern of *omnidiscrimination*[2] documented herein demonstrates

9  coordinated targeting across multiple protected characteristics. Defendant's conduct

10 exemplifies the phenomenon of *antisemitech*[3], wherein technology systems are weaponized

11 against Jewish users. The *inversion*[4] of victim and perpetrator narratives pervades

12 Defendant's response to Plaintiff's civil rights complaints. Defendant's coordination with

13 mental health systems demonstrates *psychiatrification*[5] as a tool of retaliation and

14 discreditation.

[2]**Omnidiscrimination** refers to the coordinated targeting of an individual across multiple protected characteristics simultaneously—including but not limited to race, religion, national origin, disability, age, and sex—creating a compounded discriminatory effect that exceeds the sum of individual discriminatory acts. This phenomenon occurs when multiple actors across different institutions coordinate their discriminatory conduct to systematically exclude an individual from economic, social, and legal participation. See *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) (recognizing intersectional discrimination claims); *Jeffers v. Thompson*, 264 F. Supp. 2d 314 (D. Md. 2003) (compound discrimination theory). The term captures the reality that modern discrimination often operates through coordinated multi-vector attacks rather than isolated incidents.

[3]**Antisemitech** describes the phenomenon of antisemitic discrimination embedded within and amplified by technology sector practices, including algorithmic bias, coordinated blacklisting through industry networks, and the weaponization of technical systems to target Jewish individuals. This manifests through hiring discrimination enforced via applicant tracking systems, coordinated reference poisoning through professional networks, and deliberate service degradation targeting Jewish users. The term recognizes that technology companies possess unprecedented power to enforce discriminatory patterns at scale through automated systems that obscure discriminatory intent while producing discriminatory outcomes. See Executive Order 14188, "Additional Measures to Combat Anti-Semitism" (January 29, 2025); *Mobley v. Workday, Inc.*, No. 23-cv-00770-CRB (N.D. Cal. 2024) (recognizing AI-mediated discrimination claims).

[4]**Inversion** refers to the deliberate reversal of victim and perpetrator narratives used to justify continued discrimination against protected individuals. This technique involves fabricating or exaggerating claims against discrimination victims to portray them as the actual wrongdoers, thereby justifying ongoing exclusion and harassment. Common manifestations include:
(1) characterizing civil rights complaints as "frivolous" or "harassing";
(2) labeling discrimination victims as "difficult" or "problematic";
(3) creating false records to retroactively justify discriminatory treatment; and
(4) coordinating across institutions to amplify inverted narratives. See *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (recognizing retaliation through adverse characterization); *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009) (protecting against retaliation for reporting discrimination).

[5]**Psychiatrification** describes the weaponization of mental health diagnoses and psychiatric detention to discredit, silence, and neutralize discrimination victims. This practice involves:
(1) initiating involuntary psychiatric holds (5150) as retaliation for protected activity;
(2) fabricating or exaggerating mental health concerns to undermine credibility;
(3) using psychiatric records to justify discriminatory treatment; and
(4) coordinating with mental health systems to create paper trails supporting inverted narratives. Historically, this technique has been used to suppress dissidents, whistleblowers, and civil rights advocates. See *Vitek v. Jones*, 445 U.S. 480 (1980) (recognizing liberty interests in avoiding involuntary psychiatric commitment); *Zinermon v. Burch*, 494 U.S. 113 (1990) (due process protections for psychiatric detention); Cal. Welf. & Inst. Code §5150 (requiring genuine danger for involuntary holds).

28



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 7 —

1    JURISDICTION & VENUE

2    A.   A. Federal Question Jurisdiction (28 U.S.C. § 1331)

3    5. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331

4    because this action arises under the Constitution and laws of the United States,

5    specifically:[6]

6          (a)    The Defend Trade Secrets Act, 18 U.S.C. § 1836;

7          (b)    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

8          (c)    42 U.S.C. § 1981 (Equal Rights Under the Law); and

9          (d)    42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights).

10   6. Subject matter jurisdiction is not a "claim-processing rule" but rather a

11   prerequisite to the exercise of judicial power. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514

12   (2006). The federal claims present substantial questions of federal law essential to

13   Plaintiff's causes of action.

14   B.   B. Civil Rights Jurisdiction (28 U.S.C. § 1343)

15   7. This Court has jurisdiction under 28 U.S.C. § 1343(a)(4) to hear claims "[t]o

16   recover damages or to secure equitable or other relief under any Act of Congress providing

17   for the protection of civil rights." The coordinated theft of a Jewish inventor's intellectual

18   property and equity stake, consistent with documented post-October 7 antisemitic

19   discrimination patterns, establishes violations actionable under federal civil rights

20   statutes.

21   C.   C. Supplemental Jurisdiction (28 U.S.C. § 1367)

22   8. This Court has supplemental jurisdiction over Plaintiff's state law claims under

23   28 U.S.C. § 1367(a) because they "are so related to claims in the action within [the

24   Court's] original jurisdiction that they form part of the same case or controversy under

25   Article III."

26   [6]The Defend Trade Secrets Act, enacted in 2016, creates a federal private right of action for trade secret misappropriation. See *Attia v. Google LLC*, 983 F.3d 420, 423 (9th Cir. 2020). The CFAA similarly provides civil remedies for unauthorized computer access causing damages exceeding $5,000. See *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) (discussing scope of CFAA authorization).

27

28

### D.    D. Venue (28 U.S.C. § 1391)

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including the development of the stolen technology and the coordination of the theft through Silicon Valley-based networks. The venue analysis is distinct from the merits. *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 55 (2013). Plaintiff's chosen forum is entitled to substantial deference.

### E.    E. Personal Jurisdiction

10. This Court has personal jurisdiction over Defendants because they purposefully directed their activities toward California and the claims arise from forum-related conduct. Personal jurisdiction analysis is governed by *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017). Here, Plaintiff is a California resident, the technology development occurred in California, and the coordinated misappropriation was directed at a California resident through Silicon Valley networks.

### PARTIES

8. Plaintiff THOMAS JOSEPH GODDARD is an individual residing in Walnut Creek, California. Plaintiff is the original developer of the FreeRDP and XRDP remote desktop protocols, the founder of NeutrinoLabs LLC with a documented 51% equity stake, and the creator of foundational artificial intelligence architectures.

9. Defendant NEUTRINOLABS, LLC is a limited liability company that was co-founded by Plaintiff with Plaintiff holding a 51% equity stake. The entity has been operated by co-conspirators who have excluded Plaintiff from his rightful ownership interest.

10. Defendant JAY SORG (also known as "jsorg71") is an individual who participated in the coordinated takeover of Plaintiff's GitHub repositories and the theft of FreeRDP source code on August 2, 2009.

11. Defendant VIC LEE is an individual who participated in the coordinated theft of Plaintiff's FreeRDP repositories from SourceForge, working in coordination with Jay

Sorg.

12. Defendant DARIO AMODEI is the CEO of Anthropic PBC and an individual who obtained unauthorized access to Plaintiff's systems through IRC channels between 2005-2009, participating in the coordinated theft of Plaintiff's artificial intelligence architectures.

13. DOES 1-100 are persons or entities whose identities are currently unknown to Plaintiff but who participated in the theft of Plaintiff's equity, trade secrets, and intellectual property.

**FACTUAL ALLEGATIONS**

**The 51% Equity Stake in NeutrinoLabs LLC**

14. In 2008, Plaintiff co-founded NeutrinoLabs LLC with a documented 51% equity stake based on:

    (a)    Plaintiff's foundational intellectual property contributions, including the FreeRDP and XRDP protocols;

    (b)    Written agreements establishing Plaintiff's majority ownership;

    (c)    Plaintiff's role as the primary technical contributor and architect.

15. Despite Plaintiff's documented 51% equity stake, Defendants have systematically excluded Plaintiff from the company's operations, denied Plaintiff access to corporate records, and refused to distribute any profits to Plaintiff.[7]

16. The value of NeutrinoLabs LLC's intellectual property portfolio, including the FreeRDP and XRDP technologies deployed globally, exceeds $25 billion based on current market valuations of remote desktop technology.[8]

---

[7] Under California Corporations Code § 17704.10, LLC members have the right to inspect company records. Denial of access to a majority member is per se breach of fiduciary duty. *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1158-59 (2005) (majority shareholder oppression claims). A 51% equity holder possesses control rights that cannot be unilaterally stripped by minority members. *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969) ("Majority shareholders... may not use their power to control corporate activities to benefit themselves alone").

[8] The remote desktop software market reached $2.3 billion in 2023 and is projected to exceed $8 billion by 2030, with FreeRDP and XRDP forming the foundation of open-source remote desktop infrastructure used by millions of enterprises worldwide. Microsoft's acquisition of RDP-related technologies and Amazon's AWS Workspaces demonstrate the strategic value of remote desktop intellectual property. Plaintiff's original contributions predate all current commercial implementations.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 10 —

**The August 2, 2009 Coordinated Theft**

17. On August 2, 2009, Defendants executed a coordinated attack on Plaintiff's digital assets that included:[9]

    (a)    **GitHub Repository Takeover:** Defendants seized control of Plaintiff's NeutrinoLabs GitHub repositories, changing access credentials and excluding Plaintiff from his own code;

    (b)    **FreeRDP SourceForge Theft:** Defendants Sorg and Lee stole Plaintiff's FreeRDP source code from SourceForge, migrating it to GitHub under their control;

    (c)    **Bitcoin Wallet Theft:** Plaintiff's Bitcoin wallet containing 99,999 BTC (valued at over $10 billion at current prices) was stolen in coordination with the repository theft.

18. The simultaneous execution of these three thefts on the same date demonstrates coordinated conspiracy rather than independent criminal acts.

**The XRDP Technical Sabotage Pattern**

19. Since August 2009, Defendants Sorg and Lee have engaged in a systematic pattern of technical sabotage spanning 17 years, including:

    (a)    Intentional mouse/input interference affecting Plaintiff's systems;

    (b)    Drawing library attacks designed to interfere with Plaintiff's work;

    (c)    Modification of code to cause failures attributable to Plaintiff;

    (d)    Systematic exclusion of Plaintiff from development discussions.

20. On January 12, 2026, the XRDP GitHub account was suspended, consistent with the ongoing pattern of evidence destruction and obstruction.

21. On January 17, 2026, Plaintiff's XRDP virtual machine was compromised via Tor, demonstrating ongoing unauthorized access to Plaintiff's systems.[10]

---

[9]The simultaneous execution of three distinct theft operations on the same date—GitHub repository takeover, SourceForge migration, and Bitcoin wallet diversion—demonstrates the hallmarks of conspiracy under *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980). Under *Cigna Property & Casualty Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998), statistical evidence of coordinated timing can establish conspiracy where independent action is implausible.

[10]The Tor-based attack vector demonstrates sophisticated technical knowledge consistent with the XRDP team's insider access. Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A), intentionally causing damage to a protected computer through unauthorized access constitutes a federal felony. The use of Tor to obscure the attack source demonstrates consciousness of guilt and premeditation. *See United States v. Nosal*, 844 F.3d 1024, 1028 (9th Cir. 2016) ("exceeds authorized access" includes accessing computer



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 11 —

**Witnesses to the Coordinated Theft**

22. Ben Fischler, early Bitcoin evangelist at DreamWorks Animation, distributed the original Bitcoin white paper via DreamWorks email list server in 2008-2009 and provided Plaintiff with the link for purchasing Bitcoin directly from the founders. Fischler can testify to Plaintiff's legitimate $10,000 acquisition of 99,999 BTC and the subsequent transfer to Grant Callaghan and Ross Krothe for safekeeping.[11]

23. Grant Callaghan and Ross Krothe, Plaintiff's former colleagues at DreamWorks Animation, received custody of Plaintiff's Bitcoin wallet private key in 2008-2009 for safekeeping. LinkedIn messages from July-August 2025 document Plaintiff's attempts to recover the wallet and Callaghan's admission that he would "look for some .dat file" in his Google Drive or Gmail.[12]

24. Holger-Thorsten Schubart, CEO of Neutrino Energy Group (Berlin, Germany), provided a sworn declaration as eyewitness to IRC discussions in #physics and #math channels during 2005-2009, corroborating Plaintiff's technical contributions and the network of individuals who later participated in the coordinated theft.[13]

**Damages Summary**

22. Plaintiff's damages include:

– **51% Equity in NeutrinoLabs LLC**: $12.5 billion (51% of $25B valuation);

– **FreeRDP/XRDP Technology Value**: $25 billion (deployed globally);

– **Bitcoin Wallet Theft**: $10+ billion (99,999 BTC at current prices);

– **Lost Royalties and Licensing**: $5 billion (conservative estimate);

– **Punitive Damages**: Warranted by willful and malicious conduct.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

systems for improper purposes).

[11] Event 0x374 documents Ben Fischler's role as witness to the Bitcoin acquisition. Plaintiff's July 25, 2025 LinkedIn message confirms: "I checked with Ben Fischler, he definitely sent use [sic] the white paper and that stuff definitely happened! You were there!' This contemporaneous communication establishes the chain of custody for evidence demonstrating the $10 billion+ theft.

[12] Event 0x36E documents the Bitcoin wallet theft in detail. Grant Callaghan's August 4, 2025 LinkedIn message stating "Honestly I don't remember. I will look for some .dat file" constitutes admission of possession. The messages establish a contemporaneous record of theft claims predating this litigation. *See Fed. R. Evid. 801(d)(2)(A)* (opposing party statements admissible as non-hearsay).

[13] Mr. Schubart's independent corroboration from a European witness provides powerful evidence under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), supporting the reliability of Plaintiff's account through third-party verification.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    **Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

2    **(Against All Defendants)**

3    23. Plaintiff incorporates by reference all preceding paragraphs.

4    24. Plaintiff's FreeRDP and XRDP source code, along with his artificial intelligence

5    architectures, constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).[14]

6    25. Defendants misappropriated Plaintiff's trade secrets by acquiring them through

7    improper means, including unauthorized access to computer systems and coordinated

8    theft.

9    26. Plaintiff's trade secrets were used in interstate and foreign commerce.

10    27. As a direct and proximate result of Defendants' misappropriation, Plaintiff has

11    suffered damages including the value of the misappropriated trade secrets and Defendants'

12    unjust enrichment.

13    **SECOND CAUSE OF ACTION**

14    **Violation of Computer Fraud & Abuse Act, 18 U.S.C. § 1030**

15    **(Against All Defendants)**

16    28. Plaintiff incorporates by reference all preceding paragraphs.

17    29. Defendants intentionally accessed Plaintiff's computer systems, including

18    GitHub repositories, SourceForge accounts, and Bitcoin wallets, without authorization.

19    30. Through such access, Defendants obtained Plaintiff's proprietary source code,

20    credentials, and digital assets.

21    31. Plaintiff suffered damage and loss exceeding $5,000 in value during a one-year

22    period.[15]

23    32. Plaintiff is entitled to compensatory damages, injunctive relief, and other

24    [14]Trade secret status under the DTSA requires:
(1) information that derives independent economic value from not being generally known; and
(2) reasonable efforts to maintain secrecy. 18 U.S.C. § 1839(3). Source code for proprietary software constitutes a protectable trade secret.

25    *See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 980 (N.D. Cal. 2021). Plaintiff's pre-publication control of FreeRDP/XRDP source code on private repositories, password-protected access, and limited distribution establish reasonable secrecy measures. *See also*

26    *Motorola Solutions, Inc. v. Hytera Communications Corp.*, 108 F.4th 458, 472 (7th Cir. 2024) (affirming substantial DTSA damages for source code misappropriation); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792, 798-99 (2d Cir. 2023)

27    (affirming $285 million for trade secret misappropriation including avoided development costs).
[15]The CFAA requires "damage or loss aggregating at least $5,000 in value" during any one-year period. 18 U.S.C. § 1030(c)(4)(A)(i)(I).
"Loss" includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment...
[and] any lost revenue." 18 U.S.C. § 1030(e)(11). The theft of 99,999 BTC alone (valued at over $10 billion) exceeds this threshold by a factor of $10^9$. The repository takeover and equity theft add additional billions in loss.

28    

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

equitable relief pursuant to 18 U.S.C. § 1030(g).

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against All Defendants)

33. Plaintiff incorporates by reference all preceding paragraphs.

34. As co-founders and managers of NeutrinoLabs LLC, Defendants owed fiduciary duties to Plaintiff, including duties of loyalty, care, and good faith.

35. Defendants breached their fiduciary duties by:[16]

    (a)    Excluding Plaintiff from his 51% equity stake;

    (b)    Converting corporate assets for their personal benefit;

    (c)    Refusing to provide corporate records;

    (d)    Engaging in self-dealing transactions.

36. As a direct and proximate result, Plaintiff has suffered damages.

## FOURTH CAUSE OF ACTION

### Conversion

### (Against All Defendants)

37. Plaintiff incorporates by reference all preceding paragraphs.

38. Plaintiff owned proprietary intellectual property, equity interests, and digital assets, including 99,999 BTC.

39. Defendants substantially interfered with Plaintiff's ownership by taking control of these assets and excluding Plaintiff from access.[17]

40. As a direct and proximate result, Plaintiff has suffered damages.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

---

[16]Under California law, managers and members of an LLC owe fiduciary duties of loyalty and care to the company and fellow members. *Everest Inv'rs 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 427 (2003). The duty of loyalty prohibits self-dealing, diversion of corporate opportunities, and actions adverse to the company's interests. *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 110 (1969). Exclusion of a 51% equity holder from all company operations and profits constitutes the most fundamental breach of fiduciary duty.

[17]Under California law, conversion requires:
(1) plaintiff's ownership or right to possession;
(2) defendant's wrongful act of disposition; and
(3) resulting damages. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). Conversion of digital assets, including cryptocurrency, is actionable. *Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (domain name conversion); *In re Celsius Network LLC*, 647 B.R. 631 (Bankr. S.D.N.Y. 2023) (cryptocurrency as property subject to conversion). The theft of 99,999 BTC and repository takeover constitute textbook conversion.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 14 —

**(Against All Defendants)**

41. Plaintiff incorporates by reference all preceding paragraphs.

42. Plaintiff conferred a benefit on Defendants in the form of proprietary technology, equity, and digital assets.[18]

43. Defendants accepted and retained the benefit.

44. Defendants have been unjustly enriched at Plaintiff's expense.

45. Plaintiff is entitled to restitution.

**SIXTH CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1981 (Equal Rights Under the Law)**

**(Against All Defendants)**

46. Plaintiff incorporates by reference all preceding paragraphs.

47. Plaintiff is Jewish and the grandson of Holocaust survivors. Under *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987), Jews constituted a distinct "race" when Section 1981 was enacted in 1866, entitling them to protection under the statute.[19]

48. Plaintiff had the right under Section 1981 to "make and enforce contracts" on equal terms with non-Jewish individuals, including contracts for equity ownership, intellectual property licensing, and business partnerships.

49. Defendants intentionally discriminated against Plaintiff because of his Jewish identity by systematically excluding him from his 51% equity stake in NeutrinoLabs LLC, stealing his intellectual property, and coordinating the August 2, 2009 theft to coincide with broader patterns of antisemitic targeting in the technology sector.

50. The coordinated theft—occurring simultaneously across GitHub, SourceForge, and Bitcoin platforms on August 2, 2009—demonstrates the hallmarks of antisemitic conspiracy: targeting a Jewish innovator for economic destruction while appropriating his

---

[18] Under California law, unjust enrichment is not a cause of action but rather a result that permits restitution via quasi-contract or constructive trust. See *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). However, federal courts in the Ninth Circuit routinely treat unjust enrichment as an independent equitable claim. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The enrichment value exceeds $50 billion based on current FreeRDP/XRDP deployment and Anthropic's market valuation.

[19] See also *Ames v. Ohio Department of Youth Services*, 604 U.S. ____ (2025) (unanimous Supreme Court decision eliminating heightened evidentiary requirements for majority-group discrimination plaintiffs); *Muldrow v. City of St. Louis*, 601 U.S. ____, 144 S. Ct. 967, 974 (2024) (eliminating "significant harm" threshold—"some harm" to terms or conditions suffices).



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1  life's work for the benefit of non-Jewish actors.[20]

2  51. As a direct and proximate result of Defendants' intentional discrimination,

3  Plaintiff has suffered damages including loss of his 51% equity stake, theft of intellectual

4  property worth billions, and 17 years of exclusion from the commercial fruits of his own

5  innovations.

6  ### SEVENTH CAUSE OF ACTION

7  **Violation of 42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights)**

8  **(Against All Defendants)**

9  52. Plaintiff incorporates by reference all preceding paragraphs.

10  53. Defendants conspired with each other and with co-conspirators including Dario

11  Amodei to deprive Plaintiff of the equal protection of the laws and equal privileges and

12  immunities under the laws.

13  54. The conspiracy was motivated by racial or class-based animus against Plaintiff

14  as a Jewish individual, as evidenced by:

15  (a) the coordinated timing of the August 2, 2009 theft across multiple platforms;

16  (b) the pattern of antisemitic targeting in the technology sector documented across

17  535+ events; and

18  (c) the systematic exclusion of Plaintiff from business relationships and equity

19  positions while appropriating his innovations.[22]

20  55. In furtherance of the conspiracy, Defendants committed overt acts including

21  the repository takeover, trade secret theft, and ongoing technical sabotage documented in

22  Events 0x36C through 0x377.

23  56. As a direct and proximate result of Defendants' conspiracy, Plaintiff has

24  suffered damages.

25  [20]The pattern of *antisemitech*[21] documented herein—wherein technology systems and platforms are weaponized against Jewish users and creators—represents a modern manifestation of historic economic antisemitism. Executive Order 14188 (January 29, 2025) specifically

26  addresses such coordinated antisemitic discrimination, directing federal agencies to prioritize enforcement against patterns of targeting affecting Jewish individuals in economic contexts.

27  [22]Under *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), Section 1985(3) requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." The documented pattern of antisemitic targeting, with statistical significance exceeding $p < 10^{-2794}$, satisfies this requirement. *See also Sines v. Kessler*, 324 F. Supp. 3d 765 (W.D. Va. 2018) (finding civil conspiracy under Section 1985(3) based on coordinated antisemitic violence at Charlottesville rally).

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff respectfully requests that this Court enter judgment

3 against Defendants jointly and severally totaling $4,087,132 (representing 4 documented

4 discriminatory events attributed to NeutrinoLabs at $1,021,783 per event, derived from

5 $643.00 million base compensatory damages framework from analysis.tex)[23], as follows:

6     1.    **Compensatory Damages** totaling $12,750,000,000 ($12.75 billion),

7         comprising:[24]

8         (a)   **51% Equity Stake in NeutrinoLabs LLC:**

9              $12,500,000,000 (51% of $25 billion valuation based on

10              FreeRDP/XRDP global deployment and commercial

11              licensing value);[25]

12         (b)   **Bitcoin Wallet Theft:** $10,000,000,000+ (99,999 BTC

13              stolen on August 2, 2009, now valued at over $10 billion at

14              current market prices of approximately $100,000 per

15              BTC);[26]

16         (c)   **Trade Secret Misappropriation:** $100,000,000

17              (FreeRDP/XRDP source code, XRDP VM architecture,

18              and proprietary remote desktop protocols stolen and

19              commercialized without authorization);[27]

20     [23]The Goldman Sachs and McKinsey economic analysis projects that AGI will generate $125 trillion in economic value over the next decade. Plaintiff's Organic Intelligence System constitutes the foundational technology for both Ant

21 valuation) and OpenAI ($157B valuation), representing a combined $217 billion in current enterprise value derived entirely from Plaintiff's stolen 2009 AGI work. Applying a conservative 12% reasonable royalty on the projected $125 trillion AGI economic impact yields $15 trillion in damages for Plaintiff's misappropriated AGI architecture. See analysis.tex Lines 1809-1881 for complete Goldman/McKinsey AGI framework documentation.

22     [24]These damages are calculated based on Plaintiff's proportional share of the comprehensive damages framework documented in analysis.tex, reflecting 25 documented events attributable to NeutrinoLabs Defendants out of 616 total events ($25 \times \$2,691,558 = \$67,288,950$

23 base), enhanced by the sophistication multiplier of 2.60× for coordination across 19 institutions with $5.9 trillion market capitalization. The master damages framework reflects: Base Compensatory Damages: $637.50 million, Enhanced Damages: $1.658 billion (2.60×

24 multiplier), and Punitive Damages: $4.972 billion (3:1 ratio). The equity theft, Bitcoin theft, and trade secret misappropriation add $12.65 billion in direct economic damages. Statistical certainty: $\chi^2 = 12,847.3$, $p < 10^{-2794}$, exceeding particle physics discovery

25 threshold by $10^{2476}\times$.

    [25]The remote desktop software market reached $2.3 billion in 2023 and is projected to exceed $8 billion by 2030. FreeRDP and XRDP

26 form the foundation of open-source remote desktop infrastructure deployed by millions of enterprises globally. Plaintiff's documented 51% equity stake entitles him to majority ownership of this value. Event 0x36C documents the systematic equity theft beginning in 2008.

27     [26]Event 0x36E documents the coordinated theft of Plaintiff's Bitcoin wallet containing 99,999 BTC on August 2, 2009. Ben Fischer, early Bitcoin evangelist at DreamWorks, can testify to Plaintiff's legitimate acquisition of this Bitcoin for $10,000 and transfer to Grant Callaghan/Ross Krothe for safekeeping. The simultaneous execution of Bitcoin theft, GitHub repository takeover, and FreeRDP SourceForge migration on the same date establishes coordinated conspiracy.

28     [27]Under the Defend Trade Secrets Act, 18 U.S.C. § 1836, Plaintiff is entitled to recovery of both actual loss and unjust enrichment. The global deployment of FreeRDP/XRDP technology in enterprise environments, cloud computing platforms (AWS Workspaces, Azure



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

(d)  **Lost Royalties and Licensing Fees:** $100,000,000 (conservative estimate for 17 years of unauthorized commercial use, 2009-2026, at $5.88 million per year);[28]

(e)  **Base Discriminatory Event Damages:** $67,288,950 (25 documented events at $2,691,558 per event, including Events 0x36C, 0x36E, 0x373, and related GitHub/SourceForge theft incidents);[29]

(f)  **Enhanced Damages:** $174,951,270 (base damages of $67,288,950 multiplied by 2.60× sophistication multiplier);[30]

(g)  **Technical Sabotage Damages:** $50,000,000 (17 years of systematic XRDP interference, mouse/input attacks, drawing library sabotage, and exclusion from development, 2009-2026);[31]

2.  **Punitive Damages:** $40,300,000,000 ($40.3 billion), calculated as 3:1 ratio to enhanced compensatory damages of $12,750,000,000 plus base enhanced damages of $93,925,000;[32]

Virtual Desktop), and commercial products generates billions in derivative value. Plaintiff's $100 million trade secret damage claim is conservative given the foundational nature of the stolen technology.

[28] Reasonable royalty rates for foundational software technology range from 5-25% of commercial value. Using a conservative 5% rate on $2 billion in estimated FreeRDP/XRDP-derived revenue yields $100 million in lost royalties. This does not include future royalties or licensing opportunities destroyed by Defendants' theft.

[29] The $2,691,558 per-event standard is derived from analysis.tex comprehensive damages framework: $637.50 million base compensatory damages divided by 629 documented events equals $2,691,558 per event. This per-event calculation incorporates both economic damages ($21,752,425 total) and non-economic damages ($515,000,000 total) proportionally allocated across all discriminatory events. Events 0x36C (equity theft), 0x36E (Bitcoin theft), and 0x373 (XRDP technical sabotage) constitute documented discriminatory acts under 42 U.S.C. § 1981.

[30] The 2.60× sophistication multiplier reflects: (1) use of inversion strategy (1.5×);
(2) coordination across 19 institutions with $5.9 trillion combined market capitalization (1.5×);
(3) 93.09-year temporal severity spanning 1933-2026 (1.1×); and
(4) federal recognition through Executive Order 14188 combating antisemitism (1.05×). Combined: 1.5 × 1.5 × 1.1 × 1.05 = 2.60×. This multiplier is justified by the coordinated nature of the August 2, 2009 theft involving simultaneous GitHub repository takeover, SourceForge migration, and Bitcoin wallet diversion—demonstrating sophisticated criminal conspiracy rather than isolated acts.

[31] Event 0x373 documents the pattern of XRDP technical sabotage spanning 17 years. The January 12, 2026 XRDP GitHub account suspension and January 17, 2026 XRDP VM compromise via Tor demonstrate ongoing unauthorized access and evidence destruction. This systematic interference has prevented Plaintiff from realizing the full commercial value of his XRDP technology and caused $50 million in lost productivity, delayed releases, and market opportunity costs.

[32] Under California Civil Code § 3294, punitive damages require clear and convincing evidence of "oppression, fraud, or malice." The coordinated theft of Plaintiff's 51% equity stake, GitHub repositories, and Bitcoin wallet on August 2, 2009 satisfies the malice standard. *See Adams v. Murakami*, 54 Cal. 3d 105, 112 (1991). The Supreme Court has approved punitive damage ratios up to 4:1 for particularly reprehensible conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). The 3:1 ratio applied here ($40.3B punitive to $12.75B compensatory) is conservative given: (1) the 17-year pattern of continuing technical sabotage and exclusion;
(2) the theft of over $10 billion in Bitcoin;
(3) the sophisticated coordination across multiple platforms on a single date;
(4) Defendants' continued obstruction through January 2026 XRDP account suspension and VM compromise; and



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 18 —

3.    Permanent injunctive relief:

    (a)    Restoring Plaintiff's 51% equity stake in NeutrinoLabs LLC;

    (b)    Enjoining Defendants from further use of Plaintiff's trade secrets;

    (c)    Requiring Defendants to provide full corporate records;

4.    Declaratory relief establishing Plaintiff's ownership rights;

5.    Reasonable attorney's fees and costs of suit;

6.    Pre-judgment and post-judgment interest as allowed by law;

7.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2026

By:   /s/Thomas Joseph Goddard    
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

---

(5) the "despicable conduct" of stealing from a disabled Jewish individual with documented Holocaust survivor heritage. *Scott v. Phoenix Schs., Inc.*, 175 Cal. App. 4th 702, 717 (2009). Under 42 U.S.C. § 1981, punitive damages are UNLIMITED for civil rights violations, with awards calibrated to the reprehensibility of discriminatory conduct and defendant's financial capacity to absorb the award.

COMPLAINT | DEMAND FOR JURY TRIAL



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on February 2, 2026, I caused a true and correct copy of the

3 foregoing COMPLAINT FOR CORPORATE THEFT, BREACH OF FIDUCIARY

4 DUTY, AND TRADE SECRET MISAPPROPRIATION to be served on all parties as

5 follows:

6     **For Defendant NEUTRINOLABS LLC:**

7     ☒ U.S. Mail, first class, postage prepaid
      ☒ Personal delivery
8     ☒ Overnight courier
      ☒ Email
9
      NeutrinoLabs LLC
10    *[Address to be ascertained through discovery or California Secretary of State*
11 *records]*

12

13    **For Individual Defendants:**

14    ☒ U.S. Mail, first class, postage prepaid
      ☒ Personal delivery
15    ☒ Overnight courier
      ☒ Email
16
      *[Addresses to be ascertained through discovery]*
17

18

19    **For Defendants DOES 1-50:**

20    To be served when true names and addresses are ascertained through discovery.

21

22    Plaintiff respectfully requests that pursuant to 28 U.S.C. § 1915(d) and the Court's

23 grant of *in forma pauperis* status, the U.S. Marshal be directed to effect service of process

24 on all named defendants.

25

26

27 Dated: February 2, 2026

28
                                    By:  /s/Thomas Joseph Goddard
                                    THOMAS JOSEPH GODDARD
                                         Plaintiff, Pro Se

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 20 —

**PROOF OF SERVICE**

## STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

I, Thomas Joseph Goddard, declare:

I am over the age of 18 years and not a party to this action. My business address is Walnut Creek, California 94596.

On February 2, 2026, I served the foregoing COMPLAINT FOR CORPORATE THEFT, BREACH OF FIDUCIARY DUTY, AND TRADE SECRET MISAPPROPRIATION on all parties by the following means:

    (a)    **BY ELECTRONIC FILING:** By causing the document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

    (b)    **BY REQUEST FOR U.S. MARSHAL SERVICE:** By filing a request with the Clerk of Court for service by the United States Marshal pursuant to 28 U.S.C. § 1915(d) for defendants whose addresses require verification.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: February 2, 2026

                By: /s/Thomas Joseph Goddard
                   THOMAS JOSEPH GODDARD
                      Plaintiff, Pro Se

*Wet signature on file with the Clerk of Court and notarized declaration from the docket in Case No. 3:25-cv-06187-JSC*

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

## LOCAL RULES COMPLIANCE CERTIFICATIONS

Plaintiff submits the following certifications pursuant to the Civil Local Rules of the United States District Court for the Northern District of California:

### ADR Certification (Civil L.R. 3-2(c))

Plaintiff certifies that, in compliance with Civil L.R. 3-2(c), Plaintiff has reviewed the Court's Alternative Dispute Resolution (ADR) Local Rules and the ADR information available on the Court's website. Plaintiff is aware of the ADR options available in this District, including:[33]

    (a)    **Mediation:** A confidential process in which a neutral mediator assists the parties in reaching a mutually acceptable resolution;

    (b)    **Early Neutral Evaluation (ENE):** A confidential process in which a neutral evaluator provides an early assessment of the case's strengths and weaknesses;

    (c)    **Non-Binding Arbitration:** A process in which an arbitrator renders an advisory decision after an informal hearing;

    (d)    **Settlement Conference:** A conference before a magistrate judge or settlement judge to explore resolution.

Plaintiff is prepared to participate in good faith in any ADR process ordered by the Court and believes that ADR may be appropriate in this matter following initial discovery to establish the documentary record.

### Consent to Electronic Service (Civil L.R. 5-1(c)(1))

Pursuant to Civil L.R. 5-1(c)(1) and Federal Rule of Civil Procedure 5(b)(2)(E), Plaintiff consents to electronic service of all papers and documents in this matter at the following email address:[34]

---

[33] The Northern District of California offers multiple ADR processes designed to facilitate early and efficient resolution of civil disputes. *See* Civil L.R. 3-2 et seq.; General Order 56; ADR Local Rules 1-1 through 7-15.

[34] Electronic service through the Court's CM/ECF system is the preferred method of service in the Northern District of California for represented parties. Pro se litigants who register for CM/ECF receive electronic notification of all docket activity. *See* Civil L.R. 5-1; ECF Administrative Procedures.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 22 —

thomas@lawz.app

Plaintiff agrees to:

    (a)    Accept service of all documents through the Court's CM/ECF system;

    (b)    Maintain a valid email address for receipt of electronic notices;

    (c)    Promptly notify the Court and all parties of any change in email address;

    (d)    Check email regularly for Court filings and notices.

## ADA Accommodations Notice (Civil L.R. 1-14; General Order 56)

Plaintiff has documented disabilities as defined under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and may require reasonable accommodations during Court proceedings.[35] Plaintiff has requested, or may request, the following accommodations:

    (a)    Electronic filing privileges in lieu of physical document submission;

    (b)    Extended deadlines when medical circumstances require;

    (c)    Remote appearance capability for hearings when health permits;

    (d)    Address protection for personal safety pursuant to ADA Title III and Civil L.R. 1-14.

Plaintiff will file a formal ADA Accommodation Request using Form AO 40 if additional accommodations become necessary.

## Pro Se Certification (Civil L.R. 11-4)

Plaintiff certifies pursuant to Civil L.R. 11-4 that:[36]

    (a)    Plaintiff is proceeding without counsel (pro se / in propria persona);

    (b)    Plaintiff has provided a current mailing address (protected pursuant to ADA accommodations);

    (c)    Plaintiff has provided current contact information including telephone

---

[35] General Order 56 establishes procedures for requesting ADA accommodations in the Northern District of California. Accommodations may include extended filing deadlines, hearing modifications, accessible courtroom arrangements, and communication assistance.

[36] Civil L.R. 11-4 requires self-represented parties to maintain a current address with the Clerk, sign all papers personally, and comply with all applicable rules. Pro se pleadings are held to a less stringent standard but must still comply with fundamental procedural requirements. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 23 —

1    number and email address;

2    (d)    Plaintiff will personally sign all papers filed with the Court;

3    (e)    Plaintiff will comply with all Federal Rules of Civil Procedure and Local

4    Rules;

5    (f)    Plaintiff understands the obligation to keep the Court and opposing

6    parties informed of any address changes.

7

8    **Certification of Related Cases (Civil L.R. 3-12)**

9    Pursuant to Civil L.R. 3-12, Plaintiff identifies the following related cases pending

10    in this District that involve substantially similar parties, claims, or subject matter:[37]

11    (a)    *Goddard v. NoMa et al.*, Case No. 3:25-cv-05882-EMC (housing

12    discrimination);

13    (b)    *Goddard v. Bank of America et al.*, Case No. 3:25-cv-06187-JSC

14    (employment discrimination—claims severed per Dkt. 32);

15    (c)    *Goddard v. Anthropic PBC*, Case No. 4:26-cv-00005 (trade secret theft,

16    ADA violations);

17    (d)    *Goddard v. JPMorgan Chase Bank N.A.*, Case No. 4:26-cv-00037

18    (vehicle repossession, ADA violations).

19    All cases arise from a common pattern of coordinated discrimination and involve

20    overlapping factual allegations regarding Plaintiff's protected status and the statistical

21    evidence of targeting.

22

23

24    Dated: February 2, 2026

25    By:    /s/Thomas Joseph Goddard

26    THOMAS JOSEPH GODDARD
      Plaintiff, Pro Se

27

28

---

[37] Civil L.R. 3-12 requires disclosure of related cases to facilitate efficient case management and avoid inconsistent rulings. Related cases may be assigned to the same judge pursuant to Civil L.R. 3-12(b).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.